United States District Court
Southern District of Indiana
Indianapolis Division

**Ryan Johnson**,

       Plaintiff,

v.

**Equifax Information Services, LLC**,

       Defendant.

Case No. 1:19-cv-4270

## Complaint and Jury Demand

Plaintiff, Ryan Johnson, brings this Complaint and Jury Demand against Defendant, Equifax Information Services, LLC, and states the following allegations and claims for relief:

## Introduction

1.  The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

1

2.     Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage or employment or the like.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. 1681 et seq. (the "**FCRA**"),[1] federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers. The FCRA sets forth this and many other requirements for CRAs' operations.

---

[1] Unless otherwise specified all "**Section**" references are to the FCRA.

6.      This action seeks compensatory, statutory, and punitive damages, costs of suit and reasonable attorneys' fees for the Plaintiff resulting from Equifax's failure to abide by the requirements of the FCRA as more fully described below.

## Parties

7.      Plaintiff, Ryan Johnson, resides in Spanish Fork, Utah.

8.      Plaintiff is a consumer as defined by Section 1681a(c) of the FCRA.

9.      Equifax Information Services, LLC ("**Equifax**") is a consumer reporting agency as defined by Section 1681a(f) and is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis'' as defined by Section 1681a(p).

10.     Equifax regularly engages in the business of assembling, evaluating, and dispersing information concerning the credit histories of consumers for the purpose of furnishing consumer reports, as defined by Section 1681a(d) of the FCRA, to third parties. Equifax provides such consumer credit reports to third party subscribers for monetary compensation.

## Jurisdiction

11.     This lawsuit being brought pursuant to the FCRA presents a federal question and as such, jurisdiction arises under 28 U.S.C 1331 and 15 U.S.C 1681, *et seq*.

12.  Venue is proper within this district and division pursuant to 15 U.S.C. 1681p and 28 U.S.C. 1391(b).

## Factual Allegations

### Summary of the Fair Credit Reporting Act

13.  The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

14.  The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...."[2]

15.  The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."[3]

### Processing of Credit Information

---

[2] 15 U.S.C. 1681(b).

[3] 15 U.S.C. 1681e(b).

16.    The CRAs regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors and others.

17.    These sources are known as "**furnishers**" within the credit reporting industry and under the FCRA.

18.    The CRAs collect information from thousands of furnishers.

19.    The process by which the CRAs receive, sort, and store information is largely electronic.

20.    Furnishers report credit information to the CRAs through the use of coded tapes that are transmitted to Experian and Equifax on a monthly basis through software known as Metro 2.

21.    The CRAs take the credit information reported by furnishers and creates consumer credit files.

22.    Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to as "tradelines" within the industry).

23.    The CRAs know that different consumers can have similar names.

24.    The CRAs know that different consumers can have similar social security numbers.

25.    The CRAs know that different consumers with similar names can also have similar social security numbers.

26. The CRAs match tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information Experian and Equifax maintain about the consumer in the consumer's credit file or files.

27. The CRAs accomplish this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

28. Sometimes the CRAs these matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

### The CRAs' Chronic Mixed File Problem

7. Mixed files are chronic causes of inaccuracies that the CRAs have known about for almost four decades.[4]

8. Mixed files have been the subject of a regulatory enforcement action, attorney general investigations and of hundreds, if not thousands, of consumer complaints and litigation.[5]

9. In the mid-1990's, the Federal Trade Commission and various state attorney

---

[4] *See e.g., Thompson v.. San Antonio Retail Merchants Ass'n*, 682 F..22d 509 (5th Cir. 1982).

[5] *See e.g., Alabama v. Trans Union*, Civ. No. 92-C-7101 (N.D. Ill. Oct. 16, 1992) (Consent Order); *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996) (consumer reporting agency improperly mixed father's credit information into son's credit file).

generals' offices[6] charged the nationwide CRAs with violations of the FCRA.

10. The government enforcement actions required the CRAs to improve their procedures and prevent mixed files.[7]

11. The CRAs agreed to maintain reasonable procedures to avoid: (ii) including a consumer report information identifiable as pertaining to a consumer other than the consumer for whom a permissible purpose exists as to such report;; and (iii) displaying files identifiable as pertaining to more than one consumer in response to a subscriber request on one consumer.

12. Further, the CRAs agreed to prevent reporting to subscribers that credit information pertains to a particular consumer unless the CRA has identified such information by at least two of the following identifiers: (i) the consumer's name;; (ii) the consumer's social security number;; (iii) the consumer's date of birth; (iv) the consumer's account number with a

---

[6] Including Alabama, Arkansas, California, Connecticut, Delaware, Florida, Idaho, Illinois, Louisiana, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Mexico, New York, Ohio, Pennsylvania, Rhode Island, Texas, Utah and Washington.

[7] *See FTC v. TRW, Inc.*, 784 F.Supp. 361 (N.D. Tex. 1991))((amended by N.D. Tex. Jan. 14, 1993) (agreed order amending consent order); *TRW, Inc. v. Morales*, CV-3-91-1340-H (N.D. Tex.. Dec.. 10,, 1991); *In re Equifax Credit Information Services, Inc.*, (June 22, 1992); *In the Matter of Equifax Credit Information Services, Inc.*, 12 FTC 577 (Aug. 14, 1995); *In the Matter of Equifax Credit Information Services, Inc.*, 61 Fed. Reg. 15484 (Apr. 8, 1996); and *Alabama v. Trans Union, Corp.*, CV-92C7101 (N.D. Ill. Oct. 26, 1992).

subscriber or a similar identifier unique to the consumer.

13.    For public record information, in the event the public record information does not include at least two of the above - described personal attributes, Equifax agreed to identify the public record information by the consumer's full name (including middle initial and suffix, if available) together with the consumer's full address.

14.    The CRAs have been defendants in mixed file related FCRA lawsuits for decades.[8]

15.    One of the earliest mixed file cases, *Thomas v. Trans Union*, resulted in a $1.3 million verdict against Trans Union in 2002.[9]

16.    In 2007, Angela Williams sued Equifax in Florida and alleged Equifax mixed her file with another consumer with a similar name. The jury found in favor of Angela Williams and entered a verdict against Equifax for over $2.9 million, including $219,000 in actual damages and $2.7 million in punitive damages.[10]

---

[8] Plaintiff's Complaint, ¶¶ 25-26. *See e.g.*, *Miller v. Equifax*, Case No. 3:11-cv-01231 (D. Or. 2013); *Williams v. Equifax*, Case No. 48-2003-CA-9035-0 (Orange Co., Fla. 2008); *Thomas v. Trans Union*, Case No. 3-00-01150 (D. Or. 2002); *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) (Trans Union improperly mixed narcotic trafficker's OFAC criminal alert into innocent consumer's credit file).

[9] *Thomas v. Trans Union*, Case No. 3-00-01150 (D. Or. 2002).

[10] *Williams v. Equifax*, Case No. 48-2003-CA-9035-0 (Orange Co., Fla. 2008).

17.   In July of 2013, Judie Miller sued Equifax in Oregon and alleged that Equifax mixed her file with another consumer who had a different social security number, date of birth and address. The jury found in favor of Ms. Miller and entered a verdict against Equifax for over $18 million,, including $180,000.00 in actual damages and $18.4 million in punitive damages.[11]

18.   Experian and Equifax are aware of these verdicts.

19.   In 2012, New York Attorney General Eric T. Schneiderman launched an investigation into Experian, Trans Union and Equifax after all three agencies were the subject of numerous complaints about errors on state residents' credit reports, including mixed files, and the onerous process to fix them.

20.   This three year long investigation ultimately culminated in a Settlement agreement between the NYAG and the CRAs.[12]

21.   Through this investigation, Experian "produced a substantial volume of documents and information to the NYAG."[13]

22.   The NYAG and the CRAs also met on multiple occasions to discuss the concerns raised by the NYAG.[14]

---

[11] *Miller v. Equifax*, Case No. 3:11-cv-01231 (D. Or. 2013).

[12] *In the Matter of Investigation by Eric T. Schneiderman of Experian, Equifax and Trans Union*, Settlement Agreement, dated March 8, 2015 (the "**NYAG Settlement Agreement**").

[13] NYAG Settlement Agreement, at 7.

[14] *Id*.

23.     Among the concerns raised by the NYAG, were concerns about mixed files

which the NYAG Settlement Agreement describes as follows:

> Credit report errors generally arise due to incomplete or incorrect information provided by furnishers or consumers; fraud and identity theft; and, in some cases, through the CRAs' processes of matching information provided by furnishers to an individual consumer's credit files. For example, when consumers have similar names and share other identifying information such as an address, some or all of the credit information of one consumer can become "mixed" into the file of another consumer. Consumers may not be aware that their credit information has become mixed with another person's credit information.

> The CRAs employ sophisticated algorithms for matching the data submitted by furnishers to the credit files of individual consumers. The matching systems use various combinations of identifying information such as name, address, and social security number to match the credit data with an individual consumer's credit files. In order to take into account minor errors and omissions made by consumers and data furnishers, the matching systems do not require exact matches for all of the various identifying items. Thus, a CRA's matching system might, for example, match reported credit information to a particular consumer even where the reported social security number does not match all nine digits of the consumer's social security number, where several other identifying items are an exact match. The flexibility in the CRAs' matching system can benefit consumers by ensuring that positive credit information is not omitted from a consumer's file based on minor omissions or errors by the consumer or creditor in recording the consumer's identifying information. On the other hand, the flexibility in the matching system may, in certain circumstances, lead a CRA to erroneously assign the credit information of one person to another person's credit file, creating a "mixed file."[15]

50.     As explained further below, it was exactly these types of matching

algorithms employed by Experian and Equifax which caused Plaintiff's

credit file to be mixed.

_____

[15] NYAG Settlement Agreement, at 4-5.

51.     While the CRAs denied any wrong doing they agreed to make various

changes to their practices.[16]

52.     Among other things, the CRAs, including Experian and Equifax, agreed to

the following:

> The CRAs shall implement an automated process to share relevant information about consumers who dispute information contained in their credit reports when a CRA confirms that a consumer's credit file information was mixed with that of another identified consumer (hereafter referred to as a "Confirmed Mixed File"). The CRAs shall develop and share best practices for sharing Confirmed Mixed File information among the CRAs, which shall include, but are not limited to, the following actions:

> i.      Upon receipt of notice of a Confirmed Mixed File from another CRA, the receiving CRAs shall: (a) conduct a reasonable investigation into whether the disputed information is associated with the affected consumer in the CRA's credit database; and (b) take reasonable steps to avoid reporting any indicative information or tradelines deemed inaccurate because they belong to another identified consumer.

> ii.     The CRAs shall analyze their shared data on Confirmed Mixed File information and other data concerning the manner of reporting tradelines and indicative information to determine other appropriate actions, if any, that should be taken to reduce the incidence of Confirmed Mixed Files.

> iii.    The CRAs shall develop guidelines and procedures for communicating with consumers about mixed files and shall create educational content about mixed files generally, as part of the consumer education enhancements in Sections III.B.7.d and III.C.1.[17]

---

[16] *Id.* at 7-8.

[17] NYAG Settlement Agreement, at 18-19.

67.   A mixed or merged credit file is the result of the CRAs inaccurately merging credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

68.   There are many different possible causes for the merging of credit files but all of them relate in one way or another to the algorithms (the database rules) used by the CRAs to match credit information, including collection information, to a particular consumer's credit file.

69.   The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to the CRAs.

70.   A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal or "indicative" information (e.g., name, social security number, address, date of birth, etc.) by the furnishers to the CRAs.

71.   These rules also determine which credit files are merged to create a complete consumer report.

72.   Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

73.   Despite the CRAs' long-standing and specific knowledge of a mixed file problem Plaintiff's credit report still was generated by the CRAs containing information belong to another consumer.

**Plaintiff's Credit File and Consumer Reports**

74.   Plaintiff takes great pride in his good name and credit record, and works very hard to ensure that his bills are paid in full and on time every month.

75.   On April 2, 2019, Plaintiff applied to refinance their home mortgage with First Colony Mortgage Corp. ("First Colony").

76.   On April 2, 2019, First Colony requested and received a tri-merged credit report from Credit Info Systems ("CIS"), a consumer report reseller.

77.   The CIS credit report contained numerous tradelines and personal information which did not belong to Plaintiff but belonged instead to another consumer with similar identifying information.

78.   Plaintiff has disputed the inaccuracies on his credit file on multiple occasions.

79.   Upon information and belief Equifax has forwarded those disputes to the furnishers.

80.   Despite Plaintiff's multiple disputes, Equifax has failed to correct Plaintiff's credit file.

81.   Equifax has misapplied or misattributed Plaintiff's credit information to another consumer; thereby causing a mixed credit file.

82. Plaintiff's credit file and/or credit information have been misapplied, misattributed or incorrectly matched by Equifax with the credit file or files of at least one other consumer.

83. The CRAs' merging and matching algorithms have caused Plaintiff's credit file to either not exist or to be mixed with credit information and/or credit files belonging to someone other than Plaintiff.

84. Equifax failed to maintain reasonable procedures to create Plaintiff's credit file and/or to prevent Plaintiff's credit information and/or credit files from being mixed with the credit information and/or credit files of at least one other consumer.

85. Equifax knows that its database mixes credit information and credit files that should not be mixed.

86. Equifax has been sued by consumers and suffered judgments as a result of mixing consumer credit information and/or credit files.

87. When Equifax assemble consumer reports for their subscribers, it allows these subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad range of credit information; information which may in some cases belong to another consumer.

88.   Equifax also fails to require an exact match of all digits of a consumer's social security number which may in some cases result in the inclusion of credit information which belongs to another consumer.

89.   However, when consumers, like Plaintiff, request copies of their credit files, Equifax requires a complete match of all personal identifiers, resulting in a narrower match of data for the consumer.

90.   Consequently, Equifax's own procedures for disclosing information to consumers (as they are required to do by the FCRA) tends to mask or conceal the problem of mixed files.

91.   By concealing this information, Equifax impairs the ability of consumers, like Plaintiff, to identify and dispute errors resulting from mixed credit information or credit files.

92.   Equifax has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and of his consumer reports.

93.   Equifax's failures to follow reasonable procedures are willful.

94.   Within the last two (2) years Plaintiff has requested a copy of his Equifax credit file and did not receive all of his Equifax credit file or all of the information contained in his Equifax credit files or within Equifax's database pertaining to Plaintiff.

95.   Within the last two (2) years Plaintiff has applied for credit and those applications resulted in Equifax failing to create or creating and providing a

consumer report about Plaintiff to Plaintiff's potential creditors or to resellers that in turn provided the information to Plaintiff's potential creditors. The information contained within those reports was either nonexistent or included information related to consumers other than Plaintiff and information which was not disclosed to Plaintiff when he requested a copy of his Equifax credit file.

96. A consumer's right to dispute information contained in a consumer report is an important safeguard necessary to ensure accuracy. The legislative history of the FCRA rightly characterizes the dispute and correction process as "the heart of ... efforts to ensure the ultimate accuracy of consumer report."

97. Within the two years previous to the filing of this Complaint, Equifax prepared and distributed one or more consumer reports, as the term is defined by Section 1681a(d) of the FCRA, pertaining to Plaintiff that contained misleading, incomplete and/or inaccurate information tradelines belonging to other consumers.

98. Equifax has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and of his consumer reports.

99. The failures of Equifax to follow reasonable procedures are negligent and/or willful.

## Claims for Relief

## Count 1 - FCRA Claims Against Equifax

100.  The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."[18]

101.  Equifax has actual knowledge, by and through numerous other consumer lawsuits, thousands of complaints filed with the Better Business Bureau ("BBB"), actions by the FTC and numerous state attorney generals, including Ohio, and through its own agreement following the NYAG Investigation to correct the procedures which caused Plaintiff's credit file to be mixed that problems exist with matching criteria causing unrelated consumer files to merge.

102.  Despite its actual knowledge of an ongoing and chronic mixed file problem, Equifax merged Plaintiff's credit file with the credit file of another individual with the same first name and last name. Equifax's matching criteria caused Plaintiff, a consumer with excellent credit, to be slandered, harmed and humiliated by being strapped with a judgment thereby damaging his credit reputation and ability to acquire credit at the best terms available.

---

[18] *See* 15 U.S.C. 1681e(b).

103. Equifax maintained sufficient information to conclude that certain tradelines and identifying information did not belong to Plaintiff and, therefore, should not be mixed with Plaintiff's credit file.

104. Equifax did not maintain sufficient information to conclude that certain tradelines and identifying information actually belonged to Plaintiff but mixed that information into Plaintiff's credit files nonetheless.

105. Equifax has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and Plaintiff's consumer reports.

106. Equifax has failed to properly investigate Plaintiff's disputes on at least one occasion.

107. Equifax has failed to disclose the complete contents of Plaintiff's credit file(s) to Plaintiff.

108. Equifax has failed to provide Plaintiff with the information contained in his Equifax credit file(s).

109. Plaintiff has suffered damages, including the denial or inability to obtain credit and various forms of emotional distress, including frustration, confusion, anger, depression and a general feeling of helplessness, as a result of the actions and inaction of Equifax.

110. Plaintiff's actual damages include both pecuniary and non-pecuniary damages.

111. Plaintiff has been denied credit, has suffered financial loss, delay in obtaining approval for a credit, loss of credit opportunity, out-of-pocket expenses and time expended in disputing errors.

112. Plaintiff has suffered emotional distress, pain and suffering or humiliation, loss of sleep, nervousness, frustration, mental anguish over credit report, injury to his reputation, and injury to sense of well being.

113. Others can corroborate the emotional distress suffered by Plaintiff.

114. Equifax's failure to prevent mixed credit files of the type described herein (along with other FCRA violations) caused and continues to cause Plaintiff emotional distress, impaired Plaintiff's ability to obtain credit and has damaged his credit scores.

115. Plaintiff has also spent numerous hours of his time attempting to educate himself about these issues and attempting to have Equifax's inaccurate reporting corrected.

116. It distressed Plaintiff to learn that Equifax has either failed to create his credit file and/or had mixed his credit data with credit data belonging to another consumer.

117. It distressed Plaintiff to know that his credit reputation had been harmed and that he risked possible future embarrassment when seeking credit.

118. It distressed Plaintiff to know that his creditors (who view his credit history on a regular basis to make decisions about new credit or more favorable

terms on existing credit) and potential creditors who might offer his credit would have seen this inaccurate information and incorrectly concluded that he was not credit worthy.

119.   Equifax has negligently violated Section 1681e; alternatively Equifax has willfully violated Section 1681e.

120.   Equifax has negligently violated Section 1681i; alternatively Equifax has willfully violated Section 1681i.

121.   Equifax has negligently violated Section 1681g; alternatively Equifax has willfully violated Section 1681g.

122.   Plaintiff has suffered damages as a result of these violations for which Plaintiff is entitled to recover under Section 1681o or, alternatively, Section 1681n.

## Jury Demand

Plaintiff demands trial by jury.

## Request for Relief

Plaintiff respectfully requests that the Court grant any and all of the following relief: (a) actual damages; (b) statutory damages in an amount to be determined at trial; (c) punitive damages in an amount to be determined at trial; (d) costs and attorney fees; and (e) any other relief the Court deems just and proper.

Respectfully submitted,